PATERSON REDEVELOPMENT AGENCY, A BODY CORPORATE AND POLITIC, PLAINTIFF-APPELLANT, v. MAX SCHULMAN AND SALLY SCHULMAN, HIS WIFE, AND WAMAC, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued October 30, 1978—Decided January 4, 1979.

380

*Mr. Harry Zax* argued the cause for appellant (*Mr. Joseph A. La Cava,* attorney).

*Mr. Richard L. Rudin,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney).

*Mr. Robert S. Tobin* argued the cause for respondents.

The opinion of the court was delivered by

PASHMAN, J. The main issue in this case involves the extent to which defendants Max and Sally Schulman are entitled to reimbursement for relocation expenses incurred as a consequence of the condemnation of their business property. Also at issue is the propriety of defendants' failure to exhaust administrative remedies prior to filing an appeal to Superior Court. Defendants claim entitlement under the Constitution, the Relocation Assistance Act, *N. J. S. A.* 20:4–1 *et seq.,* and a consent order entered into with plaintiff Paterson Redevelopment Agency.

On May 20, 1974, the Paterson Redevelopment Agency (Agency) filed a Verified Complaint in Condemnation in order to gain possession of 101–103 and 105–107 River Street in Paterson. These buildings were owned by Max and Sally Schulman and consisted of a one-story office building (105–107) and a four-story warehouse (101–103). Due to the Agency's immediate need for the office building, defend-

ants were permitted to move goods and merchandise into the warehouse at 101–103. Defendants continued to operate their business at this time, using the River Street warehouse and a public warehouse located in Totowa.

Subsequently, on July 8, 1974 the Agency and defendants entered into a consent order signed by Superior Court Judge Edward F. Johnson. That order provided, in relevant part, that:

\* \* \* \* \* \* \* \*

(c) The cost of moving the goods, chattels. and merchandise of the defendant, Wamac Inc., from 105–107 River Street to 101–103 River Street shall be paid for by the [Agency] who shall also pay the costs of moving the goods, chattels and merchandise from the first floor of 101–103 River Street to a public bonded warehouse.

(d) The Paterson Redevelopment Agency shall pay the storage charge for the goods, chattels and merchandise of the defendant in said public bonded warehouse for a period not to exceed December 31, 1974.

(e) The defendants shall be permitted to remain in the four story building at 101–103 River Street, Paterson, New Jersey, until December 31, 1974, but shall have the right to vacate said premises sooner. The cost of moving the goods, chattels and merchandise from the building at 101–103 River Street and from the public bonded warehouse where the defendant stored its goods, chattels and merchandise and the relocation expenses of the defendants shall be paid and billed to the Paterson Redevelopment Agency.

The Agency supplemented this agreement by a letter in which it was provided, among other things, that:

\* \* \* \* \* \* \* \*

3. [The Agency] will provide reimbursement for all reasonable and necessary in-and-out handling charges associated with and related to the merchandise to be stored.

At the time it entered into the consent order, the Agency expected that federal funding would be available and intended to have reimbursement made in accordance with federal guidelines. Defendants were informed of these plans and were given a federal relocation handbook. Only city funds, however, were ultimately utilized.

Although the consent order required defendants to move from the River Street warehouse no later than December 31, 1974, they remained there, with the Agency's permission, until March 1975. At that time the defendants' business was moved to Carlstadt.

On December 20, 1974, the condemnation commissioners awarded defendants $103,535 for the River Street property. Defendants appealed this award to the Superior Court. Before trial, however, the parties agreed to accept the commissioners' report as to the value of the land and buildings without prejudice to defendants' right to seek compensation for relocation expenses.

When the parties failed to reach agreement as to relocation expenses, the matter proceeded to trial. The Agency objected to the trial being conducted on grounds of failure to exhaust administrative remedies, inasmuch as defendants had never presented their claims to the Agency for final administrative determination. The court rejected this contention, and a trial was held to determine the compensability of 24 moving expense items claimed by defendants.

At the end of the six-day trial, the court found that defendants were entitled to a reimbursement of $105,136.12, of which the Agency had already paid $25,218.25. It approved many of the 24 listed items and modified or rejected others. Judgment for the amount still owing, $79,917.87, was entered on October 21, 1976. Included in the judgment was interest at 8% per annum running from the date of the taking.

The Appellate Division, in an unpublished *per curiam* opinion dated December 14, 1977, affirmed except as to the payment of interest. This item was held to accrue not from the date of the taking but rather from the date that a particular expense was actually incurred. We granted the Agency's petition for certification. 76 *N. J.* 237 (1978).

I

■ At every stage of the proceedings below, the Agency has contended that the defendants failed to exhaust their

administrative remedies. In its view defendants should have initially presented their claims to the Agency, *N. J. A. C.* 5:11–6.4, requested a hearing, and only then appealed any unfavorable determination to the Superior Court. We conclude that the Agency is correct as to the proper procedure, but that the interests of justice require that we presently decide this case rather than remand it to the Agency.

The Agency correctly relies upon *R.* 4:69–5, which states:

Except where it is manifest that the interest of justice requires otherwise, actions under *R.* 4:69 should not be maintainable as long as there is available a right of review before an administrative agency which has not been exhausted.[1]

Furthermore, *N. J. S. A.* 20:4–19 provides that

Any person or business concern *aggrieved by final administrative determination,* concerning eligibility for relocation payments authorized by this act may appeal such determination to the Superior Court.
[emphasis added]

The availability of an administrative remedy is manifest. *N. J. S. A.* 20:4–10(a)(2), (3) authorizes the Commissioner of the Department of Community Affairs to adopt rules and regulations necessary to assure:

(2) that a displaced person who makes proper application for a payment authorized for such person by this act shall be paid promptly after a move or, in hardship cases, be paid in advance; and
(3) that any person aggrieved by a determination as to eligibility for a payment authorized by this act, or the amount of a payment, may have his application reviewed by the head of the taking agency or other appropriate officer.

Such administrative procedures have, indeed, been devised. *N. J. A. C.* 5:11–1.1 *et seq.* A claim for relocation payments by a business concern must be submitted to the

---

[1] *R.* 4:69 deals with actions in lieu of a prerogative writ.

local agency within six months after displacement. *N. J. A. C.* 5:11–6.4. The agency must then determine the claimant's eligibility and make payment as promptly as possible. *N. J. A. C.* 5:11–6.5. The regulations, in accordance with the mandates of the Administrative Procedure Act, further provide for grievance procedures including hearings before an examiner designated by the Commissioner. *N. J. A. C.* 5:11–2.16. These procedures were not followed by defendants.

It is clear from the foregoing that the proper procedure to be followed in relocation cases is for the claimant to present his demands, including any necessary substantiating documents, to the local agency. If the claimant is dissatisfied with the amounts granted, he should then request a hearing as provided in *N. J. A. C.* 5:11–2.16. Only after the hearing has taken place and a final adverse agency determination has been entered may the claimant request judicial intervention by appeal as of right to the Appellate Division. *R.* 2:2–3(a),(2).

Defendants contend that compensation is basically a constitutional issue and thus belongs within the judicial jurisdiction.[2] Even assuming that defendants have raised a question of constitutional dimension, we are unable to accept the conclusion that this alone justifies an exception to the general doctrine of exhaustion of administrative remedies.

█ The requirement of administrative exhaustion serves several purposes. First, it "is a rule of practice designed to allow administrative bodies to perform their statutory functions in an orderly manner without preliminary inter-

---

[2]The contention is made that the landowner is entitled to moving expenses as a matter of constitutional law, this being part of the "just compensation" for which our state and federal constitutions provide. The case of *Housing Auth., Bor. of Clementon v. Myers,* 115 *N. J. Super.* 467 (App. Div. 1971) is cited in support. In view of the ground upon which we have chosen to rest this opinion, it is unnecessary to consider this contention, the resolution of which we leave to another day.

ference from the courts." *Brunetti v. Borough of New Milford*, 68 *N. J.* 576, 588 (1975). *See Ward v. Keenan*, 3 *N. J.* 298, 302 (1949). In this respect the rule ensures that claims will be heard, as a preliminary matter, by the body having expertise in the area. This is particularly important where the ultimate decision rests upon factual determinations lying within the expertise of the agency or where agency interpretations of relevant statutes or regulations are desirable.

■ A second reason for requiring exhaustion of administrative remedies is to further the general policy of avoiding unnecessary adjudication. The administrative process provides a statutory framework in which the issues may often be settled on statutory grounds without judicial adjudication of constitutional claims. The Agency decision may, in many cases, satisfy the claimant, thus obviating the need for the courts to act and alleviating their caseload burden. This reluctance to adjudicate unnecessarily is particularly compelling in constitutional cases where decisions have greater gravity and permanence.

■ Even if there are constitutional implications in the issues presented, it is well settled that the mere presence of such questions does not suffice to abrogate the exhaustion requirement. *See, e. g., Brunetti v. Borough of New Milford, supra,* 68 *N. J.* at 590; *Roadway Express, Inc. v. Kingsley,* 37 *N. J.* 136, 140 (1962); *Mut. Home Dealers Corp. v. Comm. of Bank and Ins.,* 104 *N. J. Super.* 25, 31 (Ch. Div. 1968), aff'd *o. b.,* 55 *N. J.* 82 (1969). In *Brunetti,* this Court stated that

The mere allegation that a constitutional issue is involved does not relieve plaintiffs of the exhaustion requirement. To avoid this requirement, plaintiff must demonstrate not only that the constitutional question is colorable, but that the matter contains no factual questions which require administrative determination.

[*Brunetti, supra,* 68 *N. J.* at 590]

It is clear that relocation cases present numerous factual issues relating to the reasonableness of claims and the applicability of statutory provisions and regulations.

We therefore conclude that relocation claims must first be presented to the local agency. Because that agency lacks proper jurisdiction to decide constitutional claims, such issues should merely be noted, as is generally done in the municipal court. Factual presentations relevant to the constitutional issues may be made, however, to ensure an adequate record for determination on appeal. In this way both the integrity of the administrative system and the defendant's right to a judicial determination of constitutional issues will be preserved.

## II

Having found the procedure utilized in the instant case to be improper, we must decide whether to remand the matter to the Agency for further proceedings. We conclude, for the reasons stated below, that the interests of justice mandate that we instead decide the instant case on its merits.

First and foremost among these reasons is the amount of time that has elapsed since proceedings below were initiated — more than four and one-half years. To require a remand at this stage would only occasion further delay. This is related to a second reason supporting the result that we have reached, which is the extensive amount of testimony that has already taken place. One of the primary reasons for requiring administrative exhaustion is the opportunity to create a factual record. In this case such a record has already been established and there would be little gained by a remand.

We are also influenced in our decision by several other factors. Defendants had not raised this issue on appeal from the compensation award through any desire to circumvent the proper procedure but, rather, in the good faith belief that relocation expenses were a part of the just compensation

to be awarded by the commissioners and therefore properly cognizable by the Superior Court. Although we conclude that they were incorrect, we decline to penalize them for their reasonable mistake by any further delay. Further, the existence of an agreement in this case presents a unique situation making judicial decision more appropriate.

### III

Having reached the substantive issue in this case, we must decide which of defendants' claims are compensable. Although the trial court based its decision upon both constitutional and New Jersey statutory provisions as well as the consent order, we find that the issues are governed by the agreement between the parties and rely solely on our interpretation of the agreement.

### A

The Agency claims, as a preliminary matter, that it lacks the power to make agreements promising financial incentives beyond those specifically permitted by the relevant statutes. We disagree. The Agency has been given a wide range of powers by statute, including the power to condemn property, to make and execute contracts or other instruments necessary or convenient to the exercise of its powers, and to pay or compromise claims arising from agreements. *N. J. S. A.* 40:55C–12(a), (g), (j). Furthermore, the enumerated powers are to be interpreted broadly to effectuate the purposes of the Act and are not to be read as a limitation. *N. J. S. A.* 40:55C–29. This is consistent with the general rule that statutes giving powers to municipal corporations are to be liberally construed, *Scatuorchio v. Jersey City Incinerator Authority,* 14 *N. J.* 72, 85 (1953); *N. J. Const.* (1947), Art. IV, § VII, par. 11, and that additional powers may arise by fair implication from those expressly conferred. *Palisades Properties, Inc., v. Brunetti,* 44 *N. J.* 117, 133 ,(1965).

In accordance with these statutory mandates and rules of construction, we conclude that the Agency has the power to make such agreements when necessary to achieve its purpose of clearing and redeveloping blighted areas. Such agreements may be desirable, for example, where quick removal is necessary and can be effectuated by giving the property owner financial incentives additional to those provided in the statute. This does not mean, however, that all such agreements are valid. The agency would be beyond its power, for example, were it to offer financial considerations not in the nature of additional moving expense coverage.

### B

We now reach the question as to the terms of the agreement and the compensability of defendants' alleged expenses. After reviewing the record, we conclude that the Agency agreed generally to compensate for all reasonable relocation expenses and that the parties specifically agreed, as found by the trial court, that federal relocation guidelines would apply. We thus proceed to a determination as to which of the expenses are encompassed within that agreement. In the interest of brevity, we will not address each claim individually, but instead merely note that we affirm the award of the trial judge with the following modifications.

As to Item 1, which involved certain warehousing, trucking and storage expenses, we find the defendants entitled to only $18,050.54, rather than the $22,367.86 awarded below. Of the amount claimed, $4,317.32 derived from warehousing charges incurred after December 31, 1974 which was the date to which the consent order explicitly limited storage charges. This time period was not extended by the Agency's allowing defendants to remain beyond that date as that grant specifically denied any right to storage payments beyond December 31.

Item 7 dealt with costs attributable to the replacement of display cards and stationery items. Defendants con-

tended that they were entitled to payments of $31,621.41 for these items. We conclude that the defendants have failed to show that the amount of stationery printed was reasonable or that overprinting was not feasible. We find that the Agency contention is correct and that $1,400 for the overprinting of stationery should be allowed. This figure, however, does not include catalog expenses. In this regard we hold that defendants are only entitled to payments covering the cost of preparing a stamp and placing the correct address on their catalogs. Alternatively, defendants may affix stickers showing their new address.

The Agency has agreed to pay Items 10, 12 and 13, relating, respectively, to telephone reconnections, insurance on warehouse goods, and a burglar alarm, subject to the production of bills and the insurance policy. We therefore hold those items compensable on the condition that such documents be delivered to the Agency within 60 days of this opinion.

The trial court allowed an aggregate of $6,524 for Items 17 through 19. Item 17 represented closing fees for the new plant. Item 18 was for a mortgage application fee and Item 19 was the cost of an appraisal in connection with that application. All of these expenses should have been disallowed. They are not compensable under either state or federal regulations. Nor were they comprehended within the agreement of the parties, inasmuch as they represented costs associated with the new property and not relocation expenses.

Finally, we conclude that plaintiffs are not entitled to interest on the judgment. Experts for both sides testified that interest was not provided for by either state or federal regulations. We agree. Although the Eminent Domain Act grants interest for condemnation awards, *N. J. S. A.* 20:3-31, that Act does not apply to relocation expenses but merely to the value of the condemned property. In this respect we agree with the Appellate Division. That

court, however, granted interest as part of the agreement between the parties. We conclude that interest is not fairly encompassed within the consent order and supplemental agreement. Since there is no state provision granting interest for relocation expenses, we decline to make any award therefor.

We therefore conclude that defendants are entitled to judgment for the following:

| | | |
|---|---|---|
| 1. | Warehousing, trucking and storage | $18,050.54 |
| 2. | Payroll — moving from Paterson to Totowa | 600.00 |
| 3. | Handling charges from warehouse to River Street | 747.61 |
| 4. | Supervisory payroll — from 107 River Street to 101 River Street, not included above | 600.00 |
| 5. | Moving expenses from warehouse to Carlstadt plant | 15,000.00 |
| 6. | Moving expenses from River Street to Carlstadt | 23,700.00 |
| 7. | Replacement of display cards and stationery items | 1,400.00 |
| 8. | Relocation search | 500.00 |
| 9. | Telephone reconnections | 483.20 |
| 10. | Certificate of Occupancy | 50.00 |
| 11. | Insurance on warehouse goods | 1,242.50 |
| 12. | Burglar alarm | 500.00 |
| 13. | Supervisory payroll from Paterson to Carlstadt | 600.00 |
| 14. | Relocating burglar alarm from 105–107 to 101–103 River Street | 414.75 |
| 15. | Relocating telephone from 105–107 to 101–103 River Street | 184.79 |
| | Total | $64,073.39 |

We note that $25,218.25 of this amount has already been paid by the Agency. Furthermore, the amounts for the telephone reconnections ($483.20), insurance on warehouse goods ($1,242.50), and burglar alarm ($500.00) need only be paid if proper documents are submitted within 60 days.

Finally, defendants are entitled to payments, albeit nominal, for readdressing their catalogs. As there is no evidence in the record as to the cost of such an undertaking, it must be treated as a separate matter. If defendants desire compensation for such expenses, they must present their claims to the Agency through the mandated procedures.

This item does not affect the judgment already granted which will be paid as discussed above.

For the foregoing reasons, the opinion of the Appellate Division is modified and, as modified, affirmed.

*For modification and affirmance*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*For reversal*—None.