The judgment sustaining the dependency claim petition is reversed.

IN RE RELOCATION CLAIM OF BERWICK ICE, INC., PETITIONER–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 31, 1989—Decided March 22, 1989.

Before Judges MICHELS, MUIR, Jr. and KEEFE.

*Matthew M. Millichap* argued the cause for appellant Berwick Ice, Inc.

*Cheryl R. Clarke,* Deputy Attorney General, argued the cause for respondent Bureau of Housing Inspection, Department of Community Affairs (*Donald R. Belsole,* Acting Attorney General, attorney; *Michael R. Clancy,* Deputy Attorney General, of counsel; *Cheryl R. Clarke,* on the brief).

The opinion of the court was delivered by

MUIR, Jr., J.A.D.

Berwick Ice, Inc., appeals from a final administrative determination of the Department of Community Affairs (DCA) denying its application for relocation assistance pursuant to the

provisions of the Relocation Assistance Law of 1967, *N.J.S.A.* 52:31B–1 *et seq.*, and the Relocation Assistance Act of 1971, *N.J.S.A.* 20:4–1 *et seq.* The appeal raises an issue on the correlation between the 1967 and 1971 Acts and the Federal Uniform Relocation Assistance Act of 1970 (Uniform Act), 42 *U.S.C.* § 4601–4655. It requires us to determine whether the DCA properly rejected Berwick's application after the latter (1) received relocation assistance pursuant to the Uniform Act; (2) reapplied for further assistance and was granted only $200 on a $640,000 claim by the Newark Housing Authority (Authority); (3) appealed the Authority's limited grant to the Regional Director of the Department of Housing and Urban Development (HUD), which denied the appeal on grounds further grants were procedurally barred, and (4) then applied to the DCA for relocation benefits after apparently abandoning any judicial recourse from the HUD denial. DCA denied Berwick's application on the grounds the relief under State statutes and related regulations are not available to claimants when the Federal statutes and regulations are applicable. Accordingly, DCA denied jurisdiction. Berwick contends *N.J.A.C.* 5:11–9.2 required the DCA to give it an administrative law judge hearing on its claim. We disagree and affirm.

HUD provided federal financial assistance to the Authority to carry out an Urban Renewal Project in an area in Newark which included Berwick's warehouse. The Authority, by agreement, took title to the warehouse on December 30, 1982, but Berwick remained in possession pending relocation. Due to unexpected unsafe conditions in the warehouse, the Authority required Berwick to move to temporary quarters pending completion of a new warehouse. In April 1984, the Authority paid Berwick $277,500 "undocumented self move expenses." Berwick moved its personalty, essentially frozen meat, to temporary quarters. Each party "reserved their rights" in connection with the payment.

In November 1985, Berwick submitted a relocation claim for approximately $640,000 to cover costs of transfer to its new

building. After several delays, none of which are significant to this opinion, a hearing examiner for the Authority determined Berwick should be paid $200 on its claim. The Authority so notified Berwick in December 1987. In February 1988, Berwick appealed to the HUD regional office. In late March, HUD's regional office manager advised Berwick the appeal was denied on grounds no further funds could be paid due to completion of the project. Berwick took no appeal from that determination. Instead, it filed with the DCA the claim under review on this appeal.

The DCA rejection letter stated in pertinent part:

The Relocation Assistance Law of 1967, *N.J.S.A.* 52:31B–1 *et seq.*, and the Relocation Assistance Act of 1971, *N.J.S.A.* 20:4–1 *et seq.* are not applicable to this matter. The Newark Redevelopment and Housing Authority displaced Berwick Ice, Inc. in accordance with the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 *U.S.C.* 4601 *et seq.* and the regulations promulgated thereunder, 24 *CFR* 42.1 *et seq.* The state statute and related regulations are not applicable where a federal act and federal regulations are in place. The deciding agency in this matter is the Authority. Any challenge to a denial of assistance must be raised in accordance with those federal regulations and reviewed in accordance with applicable procedures. Your request for relief should be raised in the first instance to the Authority and if unsuccessful to the court with jurisdiction over this matter.

This appeal followed.

## I.

### UNIFORM RELOCATION ACT OF 1970

The Uniform Act and HUD regulations pursuant thereto establish "a uniform policy for the fair and equitable treatment of persons displaced as the result of Federal and federally assisted programs in order that such persons shall not suffer disproportionate injuries as the result of programs designed for the benefit of the public as a whole." 42 *U.S.C.A.* § 4621. The Uniform Act provides that federal financial assistance will not be available to pay all or part of the cost of any program or project after January 2, 1971, unless the State agency provides for relocation and assistance payments and assistance consonant with those required under the Uniform Act. 42 *U.S.C.A.* § 4630. It also mandates that no payments made pursuant to

its provisions shall be included or required if the displaced person, here Berwick, received payment required by State law which is determined by HUD to have substantially the same purpose and effect as the Uniform Act and is part of the cost of the project that is given Federal financial assistance. 42 *U.S. C.A.* § 4631(b).

In accordance with its regulatory powers under the Uniform Act, HUD adopted a regulation which provided:

> No person shall receive any payment under these regulations if that person receives a payment under Federal, State, or local law which is determined to have the same purpose and effect as such payment under these regulations. [24 *C.F.R.* § 42.3.]

In the appendix to the regulation, HUD explained:

> This section prohibits an Agency from making a payment to a person under these regulations that would duplicate another payment the person receives under Federal, State, or local law. The Agency is not required to conduct an exhaustive search for such other payments; it is only required to avoid creating a duplication based on the Agency's knowledge at the time a payment under these regulations is computed. [24 *C.F.R.* § 42.3, Appendix A, pt. 40.]

The Uniform Act also required that before an acquiring agency (State agency) received federal funds or federal assistance, there had to be a state law in place consonant with the goals of the Uniform Act. 42 *U.S.C.A.* § 4655.

## II.

### RELOCATION ASSISTANCE LAW OF 1967

The State of New Jersey had relocation assistance legislation in place well before the Uniform Act. In early 1967, Governor Richard J. Hughes sent the proposed Relocation Assistance Law of 1967 (1967 Act), then Assembly Bill 767, to the Legislature for enactment shortly after the creation of the DCA. *See* Governor's Message re Ass'y Bill 767, Mar. 13, 1967; *see also N.J.S.A.* 52:27D-1 (establishing DCA). The 1967 Act became effective in May 1967. *See L.* 1967, *c.* 79, § 13.

Designed to assure equitable and uniform treatment of persons relocated by state and local agencies throughout the State, the 1967 Act required the Commissioner of the DCA to approve workable relocation plans of the governmental agency before

that agency could displace any individual, family or business. *See N.J.S.A.* 52:31B–5. The 1967 Act also empowered the DCA Commissioner to establish rules and regulations necessary and appropriate to govern such relocation and carry out the purposes of the legislation. *N.J.S.A.* 52:31B–10.

The 1967 Act further set specific limitations on relocation assistance payments. In pertinent part, it provided:

> No relocation assistance payment pursuant to this section shall be made to any displaced person or business concern *which has received, or is entitled to receive, payment for actual and reasonable expenses of moving said* person, his family, *business concern* ... or other personal property *pursuant to any other law of this State or of the United States.* [*N.J.S.A.* 52:31B–4(d) (emphasis added).]

## III.

## RELOCATION ASSISTANCE ACT OF 1970

In the Relocation Assistance Act of 1970 (1970 Act), *N.J.S.A.* 20:4–1 *et seq.,* New Jersey responded to the Uniform Act's mandate for state legislation on relocation assistance. The legislative statement reflects the bill's design to permit New Jersey to meet the requirements of the Uniform Act. *See* Statement to Ass'y Bill 2320, Apr. 1, 1971.

The 1970 Act complemented the 1967 Act. In doing so, it called for a uniform policy that dealt, among other things, with "State reimbursement for local relocation payments under *State assisted and local programs." N.J.S.A.* 20:4–2, [emphasis added]. It particularized in greater depth than the 1967 Act the specific local programs that required relocation assistance.

*See N.J.S.A.* 20:4–2. It also required assistance for moving and related expenses. *N.J.S.A.* 20:4–4. Additionally, it empowered the Commissioner of the DCA to implement rules and regulations necessary to enforce the legislation. *N.J.S.A.* 20:4–10.

## IV.

"It is a fundamental maxim that the opinion as to the construction of a regulatory statute of the expert administra-

tive agency charged with enforcement of that statute is entitled to great weight and is a 'substantial factor to be considered in construing the statute.' " *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 575 (1978) (quoting *Youakim v. Miller,* 425 *U.S.* 231, 235, 96 *S.Ct.* 1399, 1402, 47 *L.Ed.*2d 701, 706 (1976)); *accord New York Dept. of Social Services v. Dublino,* 413 *U.S.* 405, 421, 93 *S.Ct.* 2507, 2516–17, 37 *L.Ed.*2d 688, 699 (1973); *Peper v. Princeton University Board of Trustees,* 77 *N.J.* 55, 69–70 (1978). This deference is grounded in the notion that an administrative agency which deals regularly with cases in an area is often in a better position than are courts to assess the meaning of particular provisions. *See FTC v. Colgate Palmolive Co.,* 380 *U.S.* 374, 385, 85 *S.Ct.* 1035, 1042–43, 13 *L.Ed.*2d 904, 914 (1965). *Cf. 5 Davis, Administrative Law Treatise* (2 Ed.1984) § 29:16 at 403 (characterizing judicial deference as "a concept that is useful when the Court is in doubt about the interpretation but is satisfied to let the agency's decision stand").

Of course, principles of deference must be tempered with the caveat that courts are the "final authorities" on issues of statutory construction and courts are not required to "rubber stamp" their approval. *New Jersey Guild of Hearing Aid Dispensers v. Long, supra,* 75 *N.J.* at 575 (quoting *Federal Maritime Commission v. Seatrain Lines, Inc.,* 411 *U.S.* 726, 745–46, 93 *S.Ct.* 1773, 1784–85, 36 *L.Ed.*2d 620, 634 (1973)). Thus, a court should not defer to an administrative interpretation when the agency has "bootstrap[ped] itself into an area in which it has no jurisdiction." *Federal Maritime Commission v. Seatrain Lines, Inc.,* 411 *U.S.* 726, 745, 93 *S.Ct.* 1773, 1785, 36 *L.Ed.*2d 620, 623 (1973)), or acted in a manner that is inconsistent with the statutory mandate. *NLRB v. Brown,* 380 *U.S.* 278, 291, 85 *S.Ct.* 980, 988, 13 *L.Ed.*2d 839, 849 (1965).

Nonetheless, as a general rule, "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." *Red Lion*

*Broadcasting Co. v. FCC,* 395 *U.S.* 367, 381, 89 *S.Ct.* 1794, 1801–02, 23 *L.Ed.*2d 371, 384 (1969); *accord New Jersey Guild of Hearing Aid Dispensers v. Long, supra,* 75 *N.J.* at 575. Accordingly, our Supreme Court has expressed a limited scope of review with respect to the action of an administrative agency charged with statutory interpretation, declining to interfere unless that action is "arbitrary, capricious and unreasonable, . . . lack[s] fair support in the evidence," or violates express or implicit legislative policies. *Campbell v. Dept. of Civil Service,* 39 *N.J.* 556, 562 (1963); *accord Flanagan v. Civil Service Department,* 29 *N.J.* 1, 12 (1959); *Honachefsky v. New Jersey Civil Service Commission,* 174 *N.J.Super.* 539, 542 (App.Div. 1980).

◼ Applying these principles, we perceive no ground for disturbing the DCA determination. The federal and state legislation have comparable aims—providing relocation assistance in a fair and equitable manner. Yet, both evidence a policy goal of providing assistance from their particular funds only where other funds have not been received or made available from other sources. The federal legislation does so expressly by barring recovery of federal relocation assistance when the displaced person has received relocation assistance payment from other federal, state or local sources. The state law, in the 1967 Act, creates a bar where the displaced person has received or is entitled to receive relocation assistance from other state or federal sources. The phrase "entitled to receive" is not defined. However, it is reasonable to conclude that it applies to petitioner's circumstances here since the Authority did authorize $200 on the claim being pursued, albeit that amount is insignificant in relation to the funds sought. Additionally, the State, in the 1970 Act, suggests reimbursement shall occur only in instances of state or local funded programs. It thereby implies that even where a program is federally assisted, state and local funding has to be involved before the 1970 Act applies, something not demonstrated here. Thus, a fair reading of the state legislation is that it is complementary to the federal

legislation in that it provides relocation assistance when the federal legislation does not provide it. As such, the acts are complementary but, to a degree, mutually exclusive. The DCA ruling supports those apparent policy goals.

We recognize it can be argued petitioner was not "eligible to receive" under the 1967 Act based upon the HUD ruling. However, since that contention is open to serious debate in light of the fact that petitioner applied for and did qualify for some funds, we choose to defer to the DCA ruling in light of its expertise on the correlation between the state and federal acts and the criteria upon which federal assistance may be received.

■ Moreover, petitioner contends *Paterson Redevelopment Agency v. Schulman*, 78 *N.J.* 378 (1979), entitles it to a hearing. We disagree. The *Schulman* case did not involve a federally funded or federally assisted program. Only city funds were involved. *Id.* at 383.

In sum, we conclude the DCA determination is consonant with legislative policy. Moreover, under the circumstances, we find no basis for concluding it is arbitrary, capricious or unreasonable.

AFFIRMED.