644 A.2d 558

SMB ASSOCIATES (ANCHORING POINT), APPELLANT, v.
NEW JERSEY DEPARTMENT OF ENVIRONMENTAL
PROTECTION, RESPONDENT.

Argued March 14, 1994—Decided April 26, 1994.

*Richard M. Hluchan* argued the cause for appellant (*Levin & Hluchan,* attorneys).

*Gordon N. Litwin* argued the cause for respondents American Littoral Society, D.W. Bennett and Richard Crema (*Ansell, Zaro, Bennett, Kenney & Grimm,* attorneys).

*Mary C. Jacobson,* Assistant Attorney General, argued the cause for respondent Attorney General of New Jersey (*Deborah T. Poritz,* Attorney General of New Jersey, attorney).

PER CURIAM.

This appeal concerns primarily (1) the standing of the American Littoral Society (ALS), an environmental interest group, to contest the issuance of a development permit in a coastal zone, and (2) the ability of an interdepartmental review body to waive the substantive provisions of a regulatory plan that is under the jurisdiction of one of the agencies. We hold that in the unusual and non-recurring circumstances of this case the Appellate Division correctly held that the review panel lacked the power to waive the substantive requirements of the regulatory plan and that ALS had the required standing to challenge the review board's decision.

I

The facts of the case are set forth in the decision of the Appellate Division. 264 *N.J.Super.* 38, 624 *A.*2d 14 (1993). Briefly stated, the case involves SMB Associates' proposal to build a 200–slip marina, a 200–room motel, a restaurant, five nautical shops, a dockmaster's building, and a residential development consisting of sixty-nine townhouses, 120 condominiums, and 700 parking spaces on an undeveloped bay island. The development would require an elevated roadway covering 5.63 acres of a seventeen-acre tract of wetlands in Egg Harbor Township. The primary regulatory issues arose under the Coastal Area Facilities Review Act (CAFRA), *N.J.S.A.* 13:19–1 to –21. The Department of Environmental Protection and Energy (DEPE) is the agency charged with enforcing CAFRA. It has adopted regulations to guide the development of bay-island corridors, which are "non-oceanfront islands surrounded by tidal waters" and areas "lying

upland of wetlands and beaches but including the filled water's edge." *N.J.A.C.* 7:7E–3.24(a)(2) and (3). The regulations permit certain forms of "water dependent development" in bay-island corridors if the property "abut[s] a paved road and sewage system with adequate capacity." *N.J.A.C.* 7:7E–3.24(d). The proposed Anchoring Point development at issue in this case is "water dependent" because it involves a marina. However, in the view of DEPE, the Anchoring Point property does not abut a paved road and lacks access to sewers. Without detailing the prior history of the matter, the nub of the present controversy is the ability of the Coastal Area Review Board (CARB) to waive certain CAFRA bay-island corridor development requirements for SMB Associates.

CARB was established in 1973 as a sort of safety valve for the then-newly-enacted CAFRA. *N.J.S.A.* 13:19–13, in pertinent part, provided the following:

> The Coastal Area Review Board shall have the power to hear appeals from decisions of the [C]ommissioner [of Environmental Protection] * * *. The board may affirm or reverse the decision of the commissioner with respect to applicability of any provision of this act to a proposed use; it may modify any permit granted by the commissioner, grant a permit denied by him [or her], deny a permit granted by him [or her], or confirm his [or her] grant of a permit.

Beyond that, CAFRA does not grant explicitly any other powers to CARB.

The Appellate Division, relying on general principles of agency law, concluded in this case that "the power to waive CAFRA regulations must be exercised through the adoption of a rule establishing standards for the application of waiver authority." 264 *N.J.Super.* at 54, 624 *A.*2d 14. The Attorney General argues that agencies have inherent power to waive regulatory require-ments without first promulgating a waiver rule pursuant to the Administrative Procedure Act, *N.J.S.A.* 52:14B–1 to –21, if "ex-traordinary circumstances merit a waiver to prevent an unjust and unreasonable result in a particular case."

■ We need not resolve in this case the breadth of an agency's power to waive regulatory requirements or whether a rule autho-rizing waiver is always necessary. We are satisfied that the

Legislature did not contemplate that CARB would be authorized to waive substantive requirements of CAFRA. The CARB members are to use their best judgment and experience in applying the law to the facts of cases coming before them, but not to revise CAFRA in the process. In addition, the idiosyncratic interdepartmental nature of CARB, which is composed of the Commissioners of Environmental Protection and Energy, Commerce, and Community Affairs (or their representatives), prompts us not to generalize about the issue of agency power. Our decision not to decide this case expansively is reinforced by the fact that the Legislature has recently repealed *N.J.S.A.* 13:19–13, thus abolishing CARB. *L.* 1993, *c.* 190, § 20.

■ Those same considerations lead us to conclude that ALS had the required standing to pursue this appeal. The policy choice between the desire to have a manageable administrative hearing process (without a proliferation of parties) and the public interest in not having non-party objectors raise issues in judicial appeals that might better be resolved in the agency process is difficult. This case is atypical in that the position of the primary regulator (DEPE) in the administrative hearing was at variance with that of the final review body (CARB). ALS argues that it could not have foreseen that existing DEPE policy would not be applied to the case under review. ALS did not lay back to sandbag its opponents later. Thus, although our dissenting colleague makes an excellent argument that notions of fundamental fairness and exhaustion of administrative remedies should preclude sophisticated third-party objectors from intervening in litigation after observing its progress for several years, this is not the case for application of those principles. These facts are much too unusual to deny ALS standing to appeal, even though ALS should have made its position known earlier in the administrative process. Under the circumstances, the Appellate Division did not err in concluding that ALS, as an association concerned with the preservation of our coastal resources, had sufficient interests in the water-dependent development issues of this case to appeal the

CARB action under *Rule* 2:2–3(a)(2). Because ALS had standing to prosecute this appeal, we need not consider whether D.W. Bennett and Richard Crema had sufficient interests in the disposition of the case to provide them with standing to appeal as individuals. *See Elizabeth Fed. S. & L. Ass'n v. Howell,* 24 *N.J.* 488, 499–500, 132 *A.*2d 779 (1957) (holding that right to challenge administrative decisions "inheres not only in those who are direct parties to the initial proceedings before an administrative agency * * * but also belongs to all persons who are directly affected by and aggrieved as a result of the particular action sought to be brought before the courts for review").

The judgment of the Appellate Division is affirmed.

GARIBALDI, J., dissenting.

Today the Court holds that knowledgeable and sophisticated third-party objectors who knew and monitored this ten-year long proceeding, but who deliberately chose not to participate in the administrative proceedings or the prior appeal in the Appellate Division, *now* have the right to seek judicial review of the final administrative determination. I respectfully dissent.

To permit such objectors to thrust themselves into this matter after intentionally holding back for ten years is not only fundamentally unfair to plaintiff but also places an unnecessary burden on the scarce resources of the judiciary and the administrative agencies involved. Moreover, it deprives the Court of the administrative agencies' well-established expertise in this extremely technical field, thus violating the doctrine of exhaustion of administrative remedies and the statutory and administrative scheme of the Coastal Area Facility Review Act ("CAFRA"), *N.J.S.A.* 13:19–1 to –21.

I

This case commenced nearly ten years ago on October 18, 1984, when SMB Associates ("SMB") applied to the Department of Environmental Protection, now the Department of Environmental

Protection and Energy (DEPE), for permits under CAFRA. SMB requested the permits so it could proceed with its marina and residential development project known as Anchoring Point. CAFRA prohibits construction of a facility in a coastal area without a permit. *See N.J.S.A.* 13:19–5. Because SMB's project constituted a facility, *see N.J.S.A.* 13:19–4, the project could not progress without a permit from DEPE. The Commissioner of DEPE conducted a public hearing at which all "interested persons" had the right to participate and present comments. *See N.J.S.A.* 13:19–9(a).

After the hearing, DEPE denied SMB's applications for permits because, *inter alia*, SMB's project plan did not satisfy DEPE regulations concerning the bay island corridor policy, *see N.J.A.C.* 7:7E–3.24 (now *N.J.A.C.* 7:7E–3.21), and the general land area policy, *see N.J.A.C.* 7:7E–5.1. When SMB appealed the denial, the matter was referred to an Administrative Law Judge (ALJ) as a contested case. The ALJ found that DEPE should issue the permits because the project as proposed would meet the CAFRA standards. The Commissioner of DEPE reversed the ALJ's decision and refused to grant the permits based on his finding that the site plan violated the bay island corridor policy and the general land area policy.

SMB appealed to the Appellate Division. In an unpublished opinion, the Appellate Division affirmed the denial on the bay island corridor and the general land areas rationales cited by the Commissioner. Yet, the Appellate Division reversed the Commissioner's determination that the project violated other regulations, such as the protection of shellfish beds, loss of navigability of a channel that is part of the Intracoastal Waterway, violation of wetlands regulations, inadequacy of the proposed wetlands buffer, and the absence of an approvable storm water run-off plan. *SMB Assocs. v. New Jersey Dep't of Envtl. Protection,* No. A–2175–87 (App.Div. March 23), *certif. denied,* 117 *N.J.* 154, 564 *A.2d* 874 (1989).

Although the Appellate Division affirmed the denial, it suggested that SMB might benefit by submitting a revised plan and requesting a waiver of the bay island corridor regulations.

> However, as previously indicated, *we anticipate that SMB may elect to submit a revised plan together with requests for a waiver which may meet with DEP's approval.* If so, the DEP might want to reassess its denial justified only by the bay island corridor policy and the general land areas policy. That is, with all other policies in compliance, the agency might want to evaluate the impact of any revised proposal. For example, the regulations provide only that coastal development which does not conform to the acceptable intensity of development is discouraged, not prohibited. *N.J.A.C.* 7:7E–5.2(c). While we will not speculate further, we do note that it is possible that, if intensity of development were the only factor standing in the way of SMB's project, a plan modification in that respect might result in DEP approval.
>
> [emphasis added.]

Taking the hint, SMB requested a waiver of the bay island corridor policy and the general land area policy. DEPE denied the request, and SMB appealed to the Coastal Area Review Board ("CARB"), which is authorized to hear appeals from decisions of the Commissioner of DEPE granting or denying a permit. *See N.J.S.A.* 13:19–13. CARB had three voting members—the Commissioner of DEPE, the Commissioner of Commerce and Economic Development, and the Commissioner of Community Affairs. Over the DEPE Commissioner's objection, CARB granted the waiver and directed the issuance of the necessary permits. CARB reconsidered, pursuant to a DEPE motion, but ultimately affirmed its initial decision to grant the waiver and to direct DEPE to issue the necessary permits. DEPE elected not to appeal CARB's decision to the Appellate Division.

The date was then January 15, 1991. Although the battle had taken nearly seven years, SMB appeared to have emerged victorious. The authority to grant a waiver had never been questioned in any of the proceedings. With CARB's decision, SMB now seemingly had the go-ahead to pursue its project. Enter the American Littoral Society (ALS); its executive director, D.W. Bennett; and an area shell fisherman, Richard Crema. They filed a notice of appeal, challenging the waiver and the issuance of the permit in the Appellate Division.

SMB challenged the objectors' right to appeal. The Appellate Division held that the objectors had standing to seek judicial review of the administrative action. 264 *N.J.Super.* at 64, 624 *A.*2d 14. Today, the majority affirms that decision by relying on the language of *Elizabeth Federal Savings & Loan Ass'n v. Howell,* 24 *N.J.* 488, 499–500, 132 *A.*2d 779 (1957) (holding that right to challenge administrative decisions "inheres not only in those who are direct parties to the initial proceedings before an administrative agency * * * but also belongs to all persons who are directly affected by and aggrieved as a result of the particular action sought to be brought before the court for review"). The objectors also cite as support the following language from that case as if it were a mantra: "[If not we,] who then is there who can or will challenge an administrative decision favorable to the applicant?" *Id.* at 501, 132 *A.*2d 779.

Both quotations, however, have little meaning in the context of this case. This case is not like *Elizabeth Federal Savings & Loan Ass'n, supra,* or *In re Waterfront Development Permit,* 244 *N.J.Super.* 426, 582 *A.*2d 1018 (App.Div.1990), *certif. denied,* 126 *N.J.* 320, 598 *A.*2d 880 (1991), or *Public Interest Research Group v. Department of Environmental Protection,* 152 *N.J.Super.* 191, 377 *A.*2d 915 (App.Div.), *certif. denied,* 75 *N.J.* 538, 384 *A.*2d 517 (1977), or *Crema v. Department of Environmental Protection,* 182 *N.J.Super.* 445, 442 *A.*2d 630 (App.Div.1982), *aff'd,* 94 *N.J.* 286, 463 *A.*2d 910 (1983). In all those cases, the third-party objector to the administrative action at least attempted to participate in the administrative proceedings. Although their attempts may have proven unsuccessful, they at least registered their objection on the record. *See Elizabeth Federal Sav. & Loan Ass'n, supra,* 24 *N.J.* at 494, 132 *A.*2d 779 (stating that third-party objectors wrote to Commissioner to express their objections and their desire to be heard); *In re Waterfront Dev. Permit, supra,* 244 *N.J.Super.* at 436, 582 *A.*2d 1018 (noting that ALS sought to intervene in administrative proceedings); *Crema, supra,* 182 *N.J.Super.* at 448–49, 442 *A.*2d 630 (noting that third-party objector appealed to CARB before seeking judicial review); *Public Interest Research*

*Group, supra,* 152 *N.J.Super.* at 201–02, 377 *A.*2d 915 (noting that third-party objector sought to intervene and requested adjudicatory hearing).

In this case, by contrast, the third-party objectors elected not to act although they clearly could have acted. CAFRA affords "interested parties the opportunity to present, orally or in writing, their position concerning the application and any data they may have developed in reference to the environmental effects of [a] proposed facility." *N.J.S.A.* 13:19–9(a). In addition, DEPE regulations adopted under CAFRA permit "[a]ny interested person who considers himself aggrieved by a final action of the Division" to request a hearing. *N.J.A.C.* 7:7–5.1(2). Likewise, during an appeal to CARB, "[a]ny person or entity having a significant interest in the outcome of a hearing request may, in addition to filing a response, request permission to participate in the appeal process." *N.J.A.C.* 7:7–5.2(c). Such persons are those interested other than the applicant. *N.J.A.C.* 7:7–5.2(d) (stating, "Where the request to participate is filed by *someone other than the applicant,* evidence that a copy of the request has been mailed to the applicant shall be admitted.") (emphasis added).

Despite all those opportunities to be heard, the objectors remained silent. They never raised a complaint, never sought to be heard, and never presented arguments against SMB's permit application. Their silence was not born of ignorance of SMB's application for a permit. In fact, in an affidavit filed with the court, ALS Executive Director Bennett admitted:

> For a number of years on behalf of ALS, I have monitored the proceedings in conjunction with the permit applications of SMB Associates (Anchoring Point), particularly in conjunction with the Bay Island Corridor Policy of the regulations of NJDEP. Because we have limited funds and staff we do not intervene or seek to take part directly in any matter in which we believe the interest of the public is properly being considered and weighed by the appropriate governmental authorities.

Nor was their silence born of ignorance of the process. The objectors were well aware of their rights and were frequent players in the game. *See, e.g., In re Waterfront Development Permit, supra,* 244 *N.J.Super.* 426, 582 *A.*2d 1018; *Crema, supra,*

182 *N.J.Super.* 445, 442 *A.*2d 630 (involving objectors' intervention in CAFRA permit applications).

Here, the objectors engaged in a classic case of sandbagging, biding their time and preserving their arguments until the eleventh hour. Such attempts at sandbagging should not be, and almost invariably are not, rewarded by allowing a third-party objector to seek judicial review of an administrative determination. *See Red River Broadcasting Co., Inc. v. Federal Communications Comm'n,* 98 *F.*2d 282 (D.C.Cir.), *cert. denied,* 305 *U.S.* 625, 59 *S.Ct.* 86, 83 *L.Ed.* 400 (1938); *Bergen Pines Hosp. v. Department of Human Serv.,* 96 *N.J.* 456, 476 *A.*2d 784 (1984).

In *Red River,* the FCC's award of a radio station license was challenged by a competitor that neither had participated nor sought to participate in the proceedings before the FCC. No question existed that the competitor had a cognizable interest in the FCC's licensing decision. Nonetheless, the D.C. Circuit found that because the competitor had made no attempt to participate in the FCC proceedings, it could not be heard to complain for the first time by means of judicial review.

> The right to administrative relief is a privilege afforded by law to persons who consider themselves interested or aggrieved. Unless the interests of such a person are brought to the attention of the Commission through established procedural channels, it will be impossible for it to give them proper consideration. The Act and the rules of the Commission have made adequate provision therefor. The burden, therefore, is, and properly should be, upon an interested person to act affirmatively to protect himself. It is more reasonable to assume in this case a legislative intent that an interested person should be alert to protect his own interests than to assume that Congress intended the Commission to consider on its own motion the possible effect of its action in each case, upon every person who might possibly be affected thereby. *Such a person should not be entitled to sit back and wait until all interested persons who do so act have been heard, and then complain that he has not been properly treated. To permit such a person to stand aside and speculate on the outcome; if adversely affected, come into this court for relief; and then permit the whole matter to be reopened in his behalf, would create an impossible situation.* In a closely settled area with a number of existing stations such a procedure would permit successive appeals by many persons and as a result a complete blocking of administrative action.
>
> [98 *F.*2d at 286–87 (emphasis added).]

Likewise, in *Bergen Pines*, we refused to entertain an appeal of administrative regulations by a hospital that had declined to participate in the administrative-rulemaking proceeding. We reasoned that allowing objectors to administrative action to seek judicial review without first presenting their arguments and objections to the administrative agency "would force courts to review potentially overwhelming reams of technical data and to resolve from scratch issues as to which it does not have particular expertise." 96 *N.J.* at 474, 476 *A.*2d 784.

Moreover, "it would permit a party who fostered an inadequate rulemaking record by his own omission to take advantage of the inadequacy of the factual record in order to secure *de novo* review of the wisdom of the rule." *Ibid.* Having identified those concerns, we adopted the reasoning of Professor Schwartz, a well-respected administrative-law scholar, to preclude the hospital from arguing against administrative action for the first time in an appellate court.

> One may go further and say there is not only a right but a duty to present all relevant evidence before the agency. The fundamental principle is that issues and evidence available to the individual must be raised before the agency or the right to raise them is waived. * * * The whole scheme of the statute setting up the agency * * * would be defeated if a party could go into court and present his evidence for the first time there.
>
>      \*      \*      \*      \*      \*      \*      \*      \*
>
> Not only is review restricted to the administrative record, it is also limited to the issues raised before the agency. Both orderly procedure and good administration require that objections to agency proceedings be made while the agency has opportunity for correction. Any issue not raised at the administrative level may not be considered on review. "A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action."
>
> [*Id.* at 474–75, 476 *A.*2d 784 (quoting Bernard Schwartz, *Administrative Law* §§ 114, 206 (1976)).]

Our holding in *Bergen Pines* and the D.C. Circuit's decision in *Red River* ultimately rest on a notion of fundamental fairness. The Supreme Court explained the rationale over forty years ago in

*United States v. L.A. Tucker Truck Lines, Inc.*, 344 *U.S.* 33, 37, 73 *S.Ct.* 67, 69, 97 *L.Ed.* 54, 58 (1952):

> Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.

### III

Underlying those decisions is the doctrine of exhaustion of administrative remedies. That doctrine does not merely serve as a bar to judicial review where an opportunity still exists to pursue administrative redress. It also serves as a form of estoppel, precluding parties who inexcusably fail to present their objections and arguments before the relevant administrative body from seeking judicial review of administrative determinations. *See* Frank E. Cooper, *State Administrative Law*, Vol. II, at 586 (1st ed. 1965) (defining "the so-called doctrine of estoppel for failure to exhaust administrative remedies"); II Kenneth Culp Davis and Richard J. Pierce, Jr., *Administrative Law Treatise* § 15.1, at 306 (3rd Ed.1994) (stating that in such situations, "the court still may decline to review the final agency action because of the petitioner's failure to have exhausted the administrative remedies that were previously available"); *see also S & G, Inc. v. Morgan*, 797 *P.*2d 1085, 1087 (Utah 1990) (stating that under corollary of doctrine of exhaustion of administrative remedies, "[i]t is well settled . . . that persons aggrieved by decisions of administrative agencies 'may not, by refusing or neglecting to submit issues of fact to such agencies, by-pass them, and call upon the courts to determine . . . matters properly determinable originally by such agencies' ") (quoting *People v. Keith Ry. Equip. Co.*, 70 *Cal.App.*2d 339, 161 *P.*2d 244, 249 (1945)).

The doctrine of exhaustion of administrative remedies serves important interests.

> (1) the rule ensures that claims will be heard, as a preliminary matter, by a body possessing expertise in the area; (2) administrative exhaustion allows the parties to create a factual record necessary for meaningful appellate review; and (3) the agency decision may satisfy the parties and thus obviate resort to the courts.

[*City of Atlantic City v. Laezza,* 80 *N.J.* 255, 265, 403 *A.*2d 465 (1979).]

Those interests are undermined by the majority's failure to preclude the objectors' appeal.

Indeed, the doctrine functions precisely to preclude appeals such as this one. The propriety of issuing permits under CAFRA is undoubtedly an issue of expertise better decided by an administrative body such as DEPE or CARB. Courts do not have the expertise to evaluate the environmental issues raised by the third-party objectors. ALS's claim that the only issue on appeal is a purely legal one—whether or not DEPE may waive application of its regulations—is both untrue and overly simplistic. First of all, the objectors have made factual assertions concerning the potential impact of waiving the bay island corridor policy. Second, inextricably linked to the legal issue of waiver are the ramifications on economic development and the environment of allowing or disallowing such a waiver. Because the issues presented by the third-party objectors on appeal were not addressed at the administrative level, the factual underpinnings of those new issues were not developed at the administrative level.

We have hitherto recognized that our entire system of administrative law is better served when we resist the temptation to usurp an administrative body's position as a fact-finder and expert in a particular field. *See Abbott v. Burke,* 100 *N.J.* 269, 299, 495 *A.*2d 376 (1985) (stating that "this Court has called for exhaustion of administrative remedies when this will serve to develop a fully informed factual record and maximize the soundness of determinations through the agency's expertise"); *Paterson Redev. Agency v. Schulman,* 78 *N.J.* 378, 387, 396 *A.*2d 573 (stating that exhaustion of administrative remedies ensures that "claims will be heard, as a preliminary matter, by the body having expertise in the area"), *cert. denied,* 444 *U.S.* 900, 100 *S.Ct.* 210, 62 *L.Ed.*2d 136 (1979). This case calls for precisely such restraint.

Because I would not permit the objectors' appeal, I do not reach the waiver issue.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, and STEIN—6.

*For reversal*—Justice GARIBALDI—1.