640 A.2d 332

WARNOCK AUTOMOTIVE GROUP, INC., APPELLANT, v. STATE OF NEW JERSEY, DEPARTMENT OF THE TREASURY, GENERAL SERVICES ADMINISTRATION, DIVISION OF PURCHASE AND PROPERTY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 1, 1994—Decided April 22, 1994.

Before Judges BRODY, STERN and KEEFE.

*John F. Casey* argued the cause for appellant (*Wolff & Samson,* attorneys; *Thomas R. O'Brien,* of counsel; *Mr. Casey,* on the brief).

*Joseph B. Reilly,* Deputy Attorney General, argued the cause for respondent (*Deborah T. Poritz,* Attorney General, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Mr. Reilly,* on the brief).

The opinion of the court was delivered by

KEEFE, J.A.D.

On October 9, 1992, respondent, Division of Purchase and Property (Division), advertised a Request for Proposals (RFP), soliciting bids to provide the State with trucks and vans. Appellant, Warnock Automotive Group (Warnock), and others submitted bids in response to the RFP. The bids received by the Division in response to the RFP were publicly opened and read on November 6, 1992. On December 2, 1992, the Division announced its intention to make an award of the contracts according to the itemized categories set forth in the RFP.

Warnock was the successful bidder on a substantial number, but not all, of the items in the RFP. Consequently, on December 3, 1992, Warnock submitted a letter to the Division protesting the award of certain items of the RFP. The letter explained Warnock's reasons for claiming that it was the lowest acceptable bidder with respect to the disputed categories. Specifically, Warnock raised objections to the Division's award on sections 4, 4A, 4B, 5A, 7, 7A, 9 and 13. Warnock also protested the award of a number of contract items to bidders who had not supplied manufacturers' literature with their bid proposals as required by the RFP, and contended that the award of items 5A, 7 and 7A to Meadowlands Ford was improper in that Meadowlands Ford was in violation of the New Jersey Franchise Practices Act. Finally, Warnock contended that the Division improperly awarded a con-

tract to a bidder who had not properly disclosed its identity and ownership.

The Director of the Division of Purchase and Property (Director) responded by rejecting Warnock's arguments. Warnock supplemented its objections by a letter dated December 14, 1992. It also asked for a hearing with respect to its protest. The Director issued a final decision, including a rejection of Warnock's request for an informal hearing. However, the Director stayed her final decision until January 11, 1993 in order to enable Warnock to make an application to this court for emergent relief.

On January 11, 1993, this court stayed the Director from making an award on items 4A and 4B of the RFP, but otherwise denied Warnock's application for emergent relief. There was no application by either party to accelerate the appeal. See *R.* 2:9–2. Warnock's reply brief was filed on October 5, 1993, whereupon the matter was marked ready for calendaring.

■ At oral argument, in response to our inquiry, Warnock conceded that the issues presented on appeal are moot because, as to the awards granted without a stay and even those that were stayed, the model years of the vehicles to be supplied and the time frame for performance pursuant to the RFP make compliance impossible. Ordinarily, appellate courts will not decide issues that have become academic during the pendency of the appeal out of a reluctance to render abstract legal decisions and a desire to conserve judicial resources. *Matter of Conroy,* 190 *N.J.Super.* 453, 459, 464 *A.*2d 303 (App.Div.1983), *rev'd on other grounds,* 98 *N.J.* 321, 486 *A.*2d 1209 (1985). An exception to the general rule is where an issue presented is one of public interest, capable of repetition, yet evading judicial review. *New Jersey Div. of Youth & Family Services v. J.B.,* 120 *N.J.* 112, 118–19, 576 *A.*2d 261 (1990). In our view, only one of the issues presented by Warnock fulfills the exception criteria.

The standard terms and conditions imposed on all bidders required each bidder to disclose the name and addresses of all

owners holding 10% or more of the corporation or partnership stock or interest. Meadowlands Ford disclosed that it was wholly owned by Ford Motor Company. After the Division awarded the contract on items 5A, 7 and 7A of the RFP to Meadowlands Ford, Warnock protested the award on the ground that Ford Motor Company's ownership of Meadowlands Ford was prohibited by the New Jersey Franchise Practices Act. In response, the Director stated:

> In this regard, I have not been provided with any facts or information which would have an immediate impact upon this firm as a responsive and responsible bidder. The enforcement of any rules or regulations pertinent to franchise practices are not the responsibility of this Division. In the absence of any specific adverse determinations by the Motor Vehicle Franchise Committee or a court of competent jurisdiction, I find no basis to set-aside the bid of Meadowlands Ford.

We agree that it is not the Division's responsibility to enforce the New Jersey Franchise Practices Act. However, we believe the Director's response overlooked an important factor bearing on Meadowlands Ford's fitness.

■ N.J.S.A. 52:34–12(f) requires that a contract be awarded to "that responsible bidder whose bid, conforming to the invitation for bids, will be most advantageous to the State, price and other factors considered." ₀ A finding of irresponsibility must be supported by evidence " 'of such character concerning the irresponsibility of the bidder as would cause fair-minded and reasonable men to believe it was not in the best interest' " of the State to award the contract to that bidder. *Stano v. Soldo Constr. Co.,* 187 *N.J.Super.* 524, 534, 455 *A.2d* 541 (App.Div.1983) (quoting *Arthur Venneri Co. v. Housing Authority of City of Paterson,* 29 *N.J.* 392, 402, 149 *A.2d* 228 (1959)).

The New Jersey Franchise Practices Act, states in pertinent part:

> It shall be a violation of this act for a motor vehicle franchisor, directly or indirectly, through any officer, agent, employee, broker or any shareholder of the franchisor[ ] ... or other person, to own or operate a place of business as a motor vehicle franchisee, except that this section shall not prohibit the ownership or operation of a place of business by a motor vehicle franchisor for a period not to exceed 12 consecutive months, during the transition from one motor vehicle franchisee to another; or the investment in a motor vehicle franchisee by a motor

vehicle franchisor if the investment is for the sole purpose of supplementing the private capital investment funds of a partner or shareholder in that motor vehicle franchisee and that partner or shareholder is not otherwise employed by or associated with the motor vehicle franchisor[.] ...

[*N.J.S.A.* 56:10–28.]

The Assembly Commerce and Industry Committee comment on *L.*1985, *c.* 361, of which *N.J.S.A.* 56:10–28 was a part, states,

This bill is designed to prohibit the manufacturers, distributors and importers of motor vehicles from engaging in the business of new car sales and therefore to prevent the replacement of the State's independently-owned franchises with manufacturer-controlled dealerships.

The Legislature, in passing *N.J.S.A.* 56:10–28, was clearly concerned with the maintenance of a network of independent distributors in New Jersey, and determined that direct competition between motor vehicle franchisors and motor vehicle franchisees would threaten that goal.

We believe that the Division, while not strictly responsible for the enforcement of the Franchise Practices Act, has a responsibility as a State agency to further the goals of the Legislature. In the context of *N.J.S.A.* 52:34–12(f), it is not in the best interest of the State for an agency to award a contract to a party that the Legislature specifically wanted to exclude from direct competition with other franchise dealers in the State. Although the Division claims that it is not certain that Meadowlands Ford did not fall under one of the exceptions to *N.J.S.A.* 56:10–28, Warnock's objection raised a *prima facie* case of an illegal practice. The Division's failure to ascertain the complete facts bearing on the issue ignored an express policy of the Legislature that motor vehicle franchisors should be prevented from doing business as motor vehicle franchisees in this State unless the very narrow exceptions set forth in the statute are met. The Division should have pursued the matter further. Although no remedy can be effected under the current circumstances, we trust that the Division will explore such issues more fully in the

456

future when the violation of a legislative policy has a bearing on a bidder's fitness.

Appeal dismissed.