13 A.3d 900 (2011)
418 N.J. Super. 387
In re ADOPTION OF REGIONAL AFFORDABLE HOUSING DEVELOPMENT PROGRAM GUIDELINES by the Council on Affordable Housing.
No. A-0970-09T3
Superior Court of New Jersey, Appellate Division.
Argued January 4, 2011.
Decided February 24, 2011.
*901 Kevin D. Walsh argued the cause for appellant Fair Share Housing Center (Fair Share Housing Center, attorneys; Mr. Walsh, on the briefs).
George N. Cohen, Deputy Attorney General, argued the cause for respondent New Jersey Council on Affordable Housing (Paula T. Dow, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Mr. Cohen, on the brief).
Before Judges YANNOTTI, ESPINOSA and SKILLMAN.
The opinion of the court was delivered by
SKILLMAN, J.A.D. (retired and temporarily assigned on recall).
The dispositive issue presented by this appeal is whether a document entitled "Regional Affordable Housing Development Program Guidelines" (Guidelines), adopted by the Council on Affordable Housing (COAH) on September 9, 2009, contains rules and regulations COAH was required to adopt in accordance with the provisions of the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15, governing administrative rule-making. We conclude that the Guidelines are rules and regulations that were required to be adopted in conformity with the APA. Therefore, we invalidate the Guidelines and direct COAH to address the subject matter of the Guidelines through rule-making.
COAH was created by the Fair Housing Act (FHA), N.J.S.A. 52:27D-301 to -329.19, which the Legislature enacted in 1985 to establish an administrative mechanism for determining municipal obligations to provide affordable housing and the means by which those obligations may be satisfied. See Hills Dev. Co. v. Twp. of Bernards, 103 N.J. 1, 31-40, 510 A.2d 621 (1986).
COAH adopted the Guidelines to implement a section of amendments to the FHA enacted in 2008, L. 2008, c. 46, § 18,[1] which requires "regional planning entities" to "identify and coordinate regional affordable housing opportunities in cooperation with municipalities in areas with convenient access to infrastructure, employment opportunities, and public transportation." N.J.S.A. 52:27D-329.9(c)(2). The "planning entities" that are subject to this regional *902 planning requirement are the Meadowlands Commission, Pinelands Commission, Fort Monmouth Planning Authority, Highlands Water Protection and Planning Council, and Casino Reinvestment Development Authority, N.J.S.A. 52:27D-329.9(a), (c)(3), which encompass 181 of the State's 566 municipalities. This required regional planning "may include methods to regionally provide housing in line with regional concerns, such as transit needs or opportunities, environmental concerns, or such other factors as [COAH] may permit." N.J.S.A. 52:27D-329.9(c)(2).
On August 5, 2009, more than a year after enactment of this amendment to the FHA, COAH circulated what it characterized as "Guidelines" for implementation of the amendment. The email announcing these proposed Guidelines indicated that COAH would accept public comments until August 7, 2009, and that COAH planned to vote on the Guidelines on August 12, 2009. During this short comment period, which was subsequently extended to August 14, 2009, COAH received numerous objections to the proposed Guidelines, including that the Guidelines were actually rules and regulations that were required to be adopted in accordance with the rule-making requirements of the APA.
On September 9, 2009, COAH adopted the Guidelines in substantially the same form as originally proposed. COAH's resolution adopting the Guidelines stated that: COAH, in cooperation with the statutorily defined regional planning entities, has developed a Regional Affordable Housing Development Program (RAHDP) that permits municipalities within the jurisdiction of a regional planning entity to cooperatively plan with other municipalities for regional development of up to 50 percent of a municipality's affordable housing obligation based on certain conditions and requirements. . . .
The resolution also stated that "COAH will adopt rules governing implementation of the RAHDP." However, despite the passage of more than two and a half years since enactment of the 2008 amendments to the FHA and nearly a year and a half since adoption of the Guidelines, COAH has not adopted rules and regulations relating to the regional planning requirements of N.J.S.A. 52:27D-329.9.
On appeal, Fair Share Housing Center, a public interest organization that acts as an advocate for affordable housing policies, argues the Guidelines are invalid because: (1) they were not adopted in conformity with the APA; (2) they are inconsistent with N.J.S.A. 52:27D-329.9 and other provisions of the FHA; and (3) they violate the Mount Laurel doctrine by allowing transfers of funds for rehabilitation of dilapidated housing units.
We conclude that the Guidelines are invalid because they were not adopted in conformity with the APA. This conclusion makes it unnecessary to consider Fair Share's other arguments.
The APA defines an "administrative rule" as "each agency statement of general applicability and continuing effect that implements or interprets law or policy . . . ." N.J.S.A. 52:14B-2(e). In Metromedia, Inc. v. Director, Division of Taxation, 97 N.J. 313, 331-32, 478 A.2d 742 (1984), the Court identified six factors that should be considered in determining whether an agency pronouncement is an administrative rule:
[Whether it] (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard *903 or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy.
"[A]n agency determination must be considered an administrative rule when all or most of [these] relevant features of administrative rules are present and preponderate in favor of the rule-making process." Id. at 331, 478 A.2d 742; see also Doe v. Poritz, 142 N.J. 1, 97, 662 A.2d 367 (1995) (noting that "[t]he [Metromedia] factors need not be given the same weight, and some factors will clearly be more relevant in a given situation than others").
Under the Metromedia factors, the Guidelines constituted administrative rules that should have been adopted in conformity with the APA. The Guidelines set forth standards under which any of the 181 municipalities under the jurisdiction of the Meadowlands Commission, Pinelands Commission, Fort Monmouth Economic Authority, Highlands Water Protection and Planning Council, and Casino Redevelopment Investment Authority may transfer up to 50% of their affordable housing obligations to other municipalities within that regional planning entity's jurisdiction. Thus, the Guidelines are "intended to have wide coverage encompassing a large segment of the [municipalities] regulated" by the FHA. Metromedia, supra, 97 N.J. at 331, 478 A.2d 742.
The Guidelines also indicate that they are "intended to be applied generally and uniformly to all" the municipalities under the jurisdiction of these regional planning entities and that they operate only "prospectively" to determine those municipalities' affordable housing obligations. Ibid.
In addition, the Guidelines "prescribe[] a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization." Ibid. The 2008 amendment to the FHA under which the Guidelines were issued only confers general authority upon regional planning entities to "identify and coordinate regional affordable housing opportunities in cooperation with municipalities in areas with convenient access to infrastructure, employment opportunities, and public transportation," subject to a 50% limit on the "change in the fair share obligation of any municipality." N.J.S.A. 52:27D-329.9(c)(2). Consequently, the Legislature obviously contemplated that COAH would adopt rules and regulations that would set forth specific standards and conditions for such regional planning, including the transfer of affordable housing obligations between municipalities. The Guidelines contain such specific standards and conditions but were not adopted as rules and regulations.
Furthermore, the Guidelines "reflect[] an administrative policy that . . . was not previously expressed in any official and explicit agency determination, adjudication or rule," Metromedia, supra, 97 N.J. at 331, 478 A.2d 742, because they constitute COAH's first and only expression of its position concerning the manner by which regional planning entities and the municipalities under their jurisdiction may undertake regional planning in conformity with N.J.S.A. 52:27D-329.9(c)(2).
Finally, the Guidelines "reflect[] a decision on administrative regulatory policy in the nature of the interpretation of law," Metromedia, supra, 97 N.J. at 331-32, 478 *904 A.2d 742, specifically the interpretation and implementation of N.J.S.A. 52:27D-329.9(c)(2).
In sum, the Guidelines satisfy all the Metromedia criteria for determining whether an administrative agency pronouncement is an administrative rule that must be adopted in accordance with the APA.
COAH argues that the Guidelines were not required to be adopted as rules and regulations because they are only non-binding recommendations. However, the Guidelines indicate that regional planning entities and their constituent municipalities must comply with the standards and conditions set forth therein for a "sending" municipality to receive credit against its affordable housing obligation for housing units transferred to another municipality. In fact, nearly every section of the Guidelines uses mandatory terminology such as "shall" and "must."
Moreover, the submission of a Regional Affordable Housing Development Program (RAHDP) for COAH's approval is directly tied to the submission to COAH of a petition for substantive certification, under which a municipality may secure protection from affordable housing litigation. See N.J.S.A. 52:27D-313. For example, one section of the Guidelines provides that "[a]ny petition or re-petition [for substantive certification] proposing a RAHDP by the sending municipality shall include a statement of intent from the receiving municipality in the form of a duly adopted resolution." Another section provides that "[a] draft contractual agreement must be submitted to [COAH] by the sending municipality at the time of petition or repetition [for substantive certification]." Most significantly, the Guidelines provide that "[t]he sending municipality will receive credit toward its fair share obligation for units provided pursuant to a RAHDP." The obvious implication of this provision is that a sending municipality will not receive credit towards its fair share affordable housing obligation unless those units are transferred in conformity with the Guidelines.
In any event, we conclude that the Guidelines would be rules within the intent of N.J.S.A. 52:14B-2(e) even if they were not mandatory, because an agency pronouncement may be a "statement of general applicability and continuing effect that implements or interprets law or policy" even though it is not binding upon regulated parties. At a minimum, the Guidelines set forth standards and conditions that COAH has indicated it will accept in reviewing a petition for substantive certification by a municipality that has entered into a RAHDP. Therefore, even if the Guidelines could be construed to allow regional planning under N.J.S.A. 52:27D-329.9(c)(2) in a manner that does not strictly conform with their provisions, the Guidelines would still be agency statements of "general applicability" that set forth one route by which regional planning entities and their constituent municipalities may engage in regional planning that COAH has expressed its willingness to approve.
In support of its argument that the Guidelines were not required to be adopted in accordance with the APA procedures for rule-making because they only set forth non-binding recommendations, COAH relies upon Coalition for Quality Health Care v. New Jersey Department of Banking and Insurance, 348 N.J.Super. 272, 292-300, 791 A.2d 1085 (App.Div.), certif. denied, 174 N.J. 194, 803 A.2d 1165 (2002), which concluded that the Department of Banking and Insurance's distribution of a sample form for pre-certification of medical treatment and testing plans for automobile accident victims seeking PIP benefits did not constitute rule-making. *905 In reaching this conclusion, the court stated: "The sample did not define minimum acceptable standards, instead it served as a non-binding example, promulgated to assist, and not prescribe, the preparation of insurance policies." Id. at 298, 791 A.2d 1085. However, the court in Coalition for Quality Health Care did not conclude that the mere fact use of the sample form was not mandatory was sufficient, by itself, to establish that its distribution did not constitute rule-making. Instead, the court carefully analyzed the sample and the Department's statements regarding its use in light of each of the six Metromedia factors, id. at 296-99, 791 A.2d 1085, which led to the conclusion that the Department's "development and distribution of the sample constituted appropriate informal action, not rule-making, and was not subject to APA requirements." Id. at 300, 791 A.2d 1085.
For the reasons previously set forth, our analysis of the Guidelines in light of the Metromedia factors leads us to the opposite conclusion. The Guidelines cannot be reasonably viewed as simply an informal advisory document that describes one approach regional planning entities and their constituent municipalities may take to engage in regional planning under N.J.S.A. 52:27D-329.9(c)(2). Instead, the Guidelines set forth specific standards and conditions for regional planning that COAH will find acceptable in its administration of N.J.S.A. 52:27D-329.9(c)(2) and the other provisions of the FHA. The Guidelines do not state that COAH also may find other forms of regional planning to be compliant with N.J.S.A. 52:27D-329.9(c)(2). Moreover, even if the Guidelines stated that COAH might find alternative forms of regional planning acceptable, it seems likely that most, if not all, regional planning entities and constituent municipalities would follow the Guidelines because COAH has already approved the standards and conditions for compliance with N.J.S.A. 52:27D-329.9(c)(2) set forth therein. Therefore, even if the Guidelines do not prescribe the exclusive method by which a regional planning entity and its constituent municipalities may comply with N.J.S.A. 52:27D-329.9(c)(2), they are nevertheless rules that had to be adopted in conformity with the APA.
Accordingly, we invalidate the Guidelines and remand the matter to COAH to adopt rules and regulations to implement N.J.S.A. 52:27D-329.9(c)(2) in conformity with the APA. Jurisdiction is not retained.
NOTES
[1] Chapter 46 also amended the FHA in a number of other significant respects, including elimination of the use of regional contribution agreements as a device for satisfaction of affordable housing obligations. See In re Denial of Regional Contribution Agreement Between Galloway Twp. and City of Bridgeton, 418 N.J.Super. 232, 12 A.3d 232 (App.Div. 2011).