25 A.3d 1172 (2011)
421 N.J. Super. 614
In re HIGHLANDS MASTER PLAN, Executive Order 114, Memorandum of Understanding Between the Highlands Council and the Council on Affordable Housing, November 12, 2008 Resolution Extending Deadlines for 88 Municipalities, August 12, 2009 Resolution Extending Deadlines, and Adoption of Guidance for Highlands Municipalities that Conform to the Highlands Regional Master Plan.
No. A-1026-08T1.
Superior Court of New Jersey, Appellate Division.
Argued April 12, 2011.
Decided August 15, 2011.
*1174 Kevin D. Walsh, Cherry Hill, argued the cause for appellant Fair Share Housing Center (Fair Share Housing Center, attorneys; Mr. Walsh, on the briefs).
Barbara L. Conklin, Deputy Attorney General, argued the cause for respondents Highlands Water Protection and Planning Council, Council on Affordable Housing, and the Governor (Paula T. Dow, Attorney General, attorney; Nancy Kaplen, Assistant Attorney General, of counsel; Ms. Conklin, on the brief).
Before Judges YANNOTTI, SKILLMAN and ROE.
The opinion of the court was delivered by *1175 SKILLMAN, J.A.D. (retired and temporarily assigned on recall).
Under the Fair Housing Act (FHA), N.J.S.A. 52:27D-301 to -329.19, the Legislature delegated responsibility to the Council on Affordable Housing (COAH) to determine municipal obligations to provide affordable housing. Under the Highlands Water Protection and Planning Act (the Highlands Act), N.J.S.A. 13:20-1 to -35, the Legislature delegated responsibility for land use planning in the Highlands Region, consisting of nearly 800,000 acres in eighty-eight municipalities in the northeast corner of the State, see N.J.S.A. 13:20-7(a), to the Highlands Water Protection and Planning Council (Council), N.J.S.A. 13:20-4.
One of the Council's primary responsibilities is to adopt a regional master plan (RMP) to govern development in the Highlands Region. See N.J.S.A. 13:20-8 to -12. The Highlands Act requires COAH to "take into consideration the [RMP] prior to making any determination regarding the allocation of the prospective fair share of the [affordable] housing need in any municipality in the Highlands Region." N.J.S.A. 13:20-23(a). Thus, COAH retains responsibility, notwithstanding enactment of the Highlands Act, for determining the affordable housing obligations of Highlands Region municipalities, but it must take the RMP into consideration in discharging this responsibility.
On May 6, 2008, following this court's invalidation of substantial portions of COAH's original third round rules in In re Adoption of N.J.A.C. 5:94 and 5:95 by the New Jersey Council on Affordable Housing, 390 N.J.Super. 1, 914 A.2d 348 (App. Div.), certif. denied, 192 N.J. 71, 926 A.2d 856 (2007), COAH adopted revised third round rules. See 40 N.J.R. 2690(a) (June 2, 2008). As of that date, the Council had not adopted the RMP for the Highlands Region, although it had circulated drafts for comment.
Shortly after adopting the revised third round rules, COAH proposed amendments to those rules. 40 N.J.R. 3374(a) (June 16, 2008). Those amendments were proposed partly to take into account updated data relating to the Highlands Region, which resulted in a reduction in COAH's projected growth figures for this region. Id. at 3422-25.
On July 17, 2008, the Council adopted the RMP. On September 5, 2008, after expiration of thirty days following delivery to Governor Corzine of the minutes of the meeting at which this action was taken, the RMP became effective, as provided by N.J.S.A. 13:20-5(j).
Following COAH's adoption of the revised third round rules and the Council's adoption of the RMP for the Highlands Region, Governor Corzine, COAH, and the Council took a series of steps to coordinate the actions of COAH and the Council relating to the satisfaction of Highlands Region municipalities' affordable housing obligations.
On September 5, 2008, Governor Corzine adopted Executive Order 114, which directed the Council to work in cooperation with COAH to "review COAH's third round growth projections for consistency with the Highlands Plan and [to] assist COAH in developing adjusted growth projections within the Highlands Region." 40 N.J.R. 5312, 5313 (Oct. 6, 2008). Executive Order 114 also directed the Council to "coordinate the deadlines for revision of municipal master plans and third round fair share plans to be in conformance with both the Highlands Act and the [FHA]." Ibid. In addition, Executive Order 114 directed the Council and COAH to "enter into a joint Memorandum of Understanding" to implement the provisions of the *1176 executive order. Ibid. Executive Order 114 did not direct COAH to make any changes in the revised third round rules establishing the affordable housing obligations of Highlands Region municipalities.
In accordance with Executive Order 114, on October 30, 2008, the Council and COAH entered into a joint "Memorandum of Understanding" (MOU). The MOU provided, among other things, that "[t]he Highlands Council shall prepare adjusted growth projections . . . through the development of a built out analysis at a municipal scale for conforming municipalities consistent with the RMP" and that "COAH shall ensure that any of the eighty-eight (88) municipalities in the Highlands Region under COAH's jurisdiction that choose to conform to the RMP utilize the adjusted growth projections prepared by the Highlands Council in the development of Housing Elements and Fair Share Plans." In addition, the MOU provided that "COAH shall grant a waiver from the December 31, 2008 deadline [for the submission of petitions for substantive certification under the third round rules] to December 8, 2009 for any municipality under COAH's jurisdiction" that satisfied certain conditions set forth in the MOU.
In accordance with the MOU, on November 12, 2008, COAH adopted a resolution which provided that "COAH hereby grants a waiver from the December 31, 2008 deadline to submit a revised housing element and fair share plan . . ., extending that deadline to December 8, 2009, for all Highlands municipalities under the jurisdiction of COAH provided any municipality seeking such an extension submits" notices of an intent to petition the Highlands Council in accordance with its "Conformance Guidelines" and to file a petition for substantive certification with COAH before December 8, 2009. On August 12, 2009, COAH adopted another resolution which extended this deadline to June 8, 2010. There is no indication that COAH further extended this deadline.
On August 12, 2009, COAH adopted a second resolution, the operative sections of which state: "COAH waives N.J.A.C. 5:97-2.3(a) and 5:97-2.4 [dealing with municipalities' projected growth share obligations under the revised third round rules] for municipalities located in the Highlands Region that petition COAH and petition the Highlands Council to conform with the RMP by June 8, 2010"; and that "Highlands municipalities that petition COAH and petition the Highlands Council to conform with the RMP shall follow the procedures set forth in the document entitled `Guidance for Highlands Municipalities that Conform to the Highlands [RMP],'" (hereinafter referred to as the "Guidance document"), which was attached to the resolution.
In this appeal, appellant Fair Share Housing Center, a public interest organization that acts as an advocate for affordable housing policies, challenges the RMP and the subsequent efforts by Governor Corzine, COAH and the Council to coordinate the actions of COAH and the Council relating to the satisfaction of affordable housing obligations by Highlands Region municipalities. The two most significant issues presented by the appeal are whether the RMP adopted by the Council and the August 12, 2009 resolution and accompanying Guidance document adopted by COAH were required to be adopted in accordance with the rule-making procedures of the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15. We conclude that the Council was not required to follow the rule-making procedures of the APA in adopting the RMP and therefore affirm the validity of the RMP. However, we conclude that COAH's August 12, *1177 2009 resolution and accompanying Guidance document constituted an amendment to COAH's revised third round rules that was required to be adopted in accordance with the APA. Therefore, we invalidate that administrative action. We reject appellant's challenges to the other executive and administrative actions involved in this appeal.

I.
We first consider appellant's argument that the RMP is invalid because it was not adopted in accordance with the APA.[1]
Preliminarily, we note that although this appeal is directed solely at actions by the Governor, Council and COAH that appellant claims diluted the affordable housing obligations of the Highlands Region municipalities established by the revised third round rules, a determination that the RMP is invalid because it was not adopted in accordance with the APA would have broad ramifications beyond affordable housing obligations. The RMP deals not only with projected growth in the Highlands Region, which is a factor in the determination of municipal affordable housing obligations, but also with all other aspects of land use planning, including preservation of the Highlands Region's agricultural areas, significant historic areas, and open space; brownfield remediation and redevelopment; and the protection, restoration, and enhancement of surface and ground water quality. Moreover, the Council, Highlands Region municipalities, and property owners have proceeded under the assumption that the procedures for adoption of the RMP set forth in the Highlands Act were the only procedures the Council was required to follow. Therefore, in the absence of clear evidence the Legislature intended the Council also to follow the rule-making procedures of the APA in adopting the RMP, we are unwilling to construe the Highlands Act and APA to impose such duplicative procedural requirements upon the Council in the discharge of its regional land use planning responsibilities.
The Highlands Act sets forth detailed procedures the Council must follow before adopting the RMP. The Council is required in preparing the RMP to consult with various state agencies, including the State Planning Commission and the Departments of Environmental Protection, Community Affairs, Transportation, and Agriculture, and with officials of local government units and other governmental agencies in the Highlands Region. N.J.S.A. 13:20-9(a). The Council is also required to consult with "interested professional, scientific, and citizen organizations." Ibid. After preparing the RMP, the Council is required to hold at least five public hearings in the Highlands Region and one public hearing in Trenton before its adoption. N.J.S.A. 13:20-8(a).
The APA also sets forth detailed procedures a state agency must follow before *1178 adopting a rule, which overlap in some respects and conflict in other respects with the procedures set forth in the Highlands Act for the adoption of the RMP. The APA requires a state agency to give at least thirty days notice of a proposed rule to the media and to persons who have made timely requests for such notice, N.J.S.A. 52:14B-4(a)(1); to publish the proposed rule in the New Jersey Register, N.J.S.A. 52:14B-4(a)(3); to afford all interested persons reasonable opportunity to submit data, views or comments regarding the proposed rules, orally or in writing, ibid.; and to prepare for public distribution a report listing all parties submitting comments concerning the rule, summarizing the contents of those submissions, and providing the agency's responses. N.J.S.A. 52:14B-4(a)(4).
Thus, unlike the provisions of the Highlands Act governing adoption of the RMP, the APA does not require a state agency to consult with interested parties before proposing a rule, although an agency may, if it chooses, informally seek the views of interested parties. N.J.S.A. 52:14B-4(e). Moreover, while the Highlands Act requires the Council to conduct at least six public hearings before adopting the RMP, the APA requires a state agency to conduct a public hearing only upon "request of a committee of the Legislature or a governmental agency or subdivision, or if sufficient public interest is shown." N.J.S.A. 52:14B-4(a)(3). And although the Highlands Act does not require the Council to publish the RMP in the Register, as required when a state agency proposes a rule, the Council provided similar public notice of the contents of the RMP by publication on its website. New Jersey Highlands Council, Master Plan, http:// www.highlands.state.nj.us/njhighlands/ master/ (last visited July 19, 2011). In sum, the Highlands Act requires the Council to follow procedures for giving public notice and an opportunity for public comment before adopting the RMP that serve the same purpose but differ in significant respects from the procedures set forth in the APA for state agencies to follow in adopting administrative rules.
The question is whether, despite this substantial overlap between the procedures set forth in the Highlands Act for adoption of the RMP and the provisions of the APA governing rule-making, the Highlands Council was required to follow not only the procedures set forth in the Highlands Act but also the APA in adopting the RMP. Where two statutes deal with the same or related subject, and there is an inconsistency in their provisions, the provisions of the more specific statute will generally prevail over those of the more general statute. See Clymer v. Summit Bancorp., 171 N.J. 57, 69-70, 792 A.2d 396 (2002). In enacting the Highlands Act, the Legislature specifically set forth the procedures the Council was required to follow in adopting the RMP. Although the Council's "powers and duties" include the adoption "pursuant to [the APA of] such rules and regulations as may be necessary in order to exercise its powers and perform its duties and responsibilities under [the Highlands Act]," N.J.S.A. 13:20-6(y), they also include the adoption of "a [RMP] for the Highlands Region as provided pursuant to [N.J.S.A. 13:20-8]," N.J.S.A. 13:20-6(i). Thus, the Legislature required the RMP to be adopted in accordance with the specific procedures set forth in the Highlands Act itself, rather than the general procedures governing agency rule-making set forth in the APA. For these reasons, we reject appellant's challenge to the validity of the RMP.

II.
We next consider appellant's argument that Executive Order 114 is invalid *1179 because it conflicts with the FHA and Highlands Act and "usurped" the responsibilities the Legislature delegated to COAH and the Council under those statutes.
"Executive orders, when issued within their appropriate constitutional scope, are an accepted tool of gubernatorial action." Commc'ns Workers of Am. v. Christie, 413 N.J.Super. 229, 254, 994 A.2d 545 (App.Div.2010). However, "[a]n executive order is invalid if it usurps legislative authority by acting contrary to the express or implied will of the Legislature." Id. at 259, 994 A.2d 545. Therefore, an executive order will be construed to conform with applicable statutory enactments if it is reasonably susceptible to such a construction. See Worthington v. Fauver, 88 N.J. 183, 194-201, 440 A.2d 1128 (1982); Bullet Hole, Inc. v. Dunbar, 335 N.J.Super. 562, 575, 763 A.2d 295 (App.Div.2000).
The Highlands Act contains an express directive to COAH to "take into consideration the [RMP] prior to making any determination regarding the allocation of the prospective fair share of the [affordable] housing need in any municipality in the Highlands Region under the [FHA]." N.J.S.A. 13:20-23(a). In addition, the FHA, as amended in 2008, L. 2008, c. 46, § 18, requires regional planning entities, which include the Highlands Council, N.J.S.A. 52:27D-329.9(a), to "identify and coordinate regional affordable housing opportunities in cooperation with municipalities" under their jurisdiction, N.J.S.A. 52:27D-329.9(c)(2). Thus, the Highlands Act and FHA can be reasonably construed to direct COAH and the Council to coordinate the discharge of their respective statutory responsibilities regarding land use planning in the Highlands Region, including those relating to affordable housing opportunities.
The evident intent of Executive Order 114 was to implement these provisions of the Highlands Act and FHA. The "whereas" clauses of the order recite that "the Highlands Act directs that [COAH] shall take into consideration the [RMP] prior to making any determination regarding the allocation of the prospective fair share of the [affordable] housing need in any municipality in the Highlands Region" and that "the [FHA] was amended [in 2008] to create a responsibility for the Highlands Council to plan for and create opportunities for affordable housing on a regional basis." 40 N.J.R. 5312, 5313 (Oct. 16, 2008). The operative clauses require the Council to "work in cooperation with [COAH]" and other state agencies to "review COAH's third round growth projections for consistency with the Highlands Plan"; to "assist COAH in developing adjusted growth projections within the Highlands Region, consistent with the Highlands Plan, to be utilized by municipalities that conform to the Highlands Plan"; to "create realistic opportunities for municipalities to address the actual growth share obligations resulting from residential and non-residential development . . . in the Highlands Region"[;] to "identify sites and opportunities for affordable housing within the Highlands Region"; and to "coordinate the deadlines for revision of municipal master plans and third round fair share plans to be in conformance with both the Highlands Act and the [FHA], including reasonable extensions of deadlines." Ibid.
However, the only affirmative obligations the operative sections of the order impose upon COAH, which has exclusive statutory authority to determine municipal affordable housing obligations, see Hills Dev. Co. v. Twp. of Bernards, 103 N.J. 1, 31-34, 510 A.2d 621 (1986), are to enter into a joint MOU with the Council and to submit to the Governor, jointly with the Council, quarterly written reports "on the status of the coordinated efforts" that the *1180 order requires. 40 N.J.R. 5312, 5313 (Oct. 6, 2008). The order does not require COAH to change the "growth projections" or "allocations of prospective fair share" of affordable housing set forth in its revised third round rules.
A Governor's executive order may not direct a state agency to take action that is inconsistent with the enabling legislation under which it operates or its own rules and regulations. See Commc'ns Workers of Am., supra, 413 N.J. Super. at 259, 994 A.2d 545. However, appellant has not identified any such directive in Executive Order 114. At most, the executive order can be read to direct COAH and the Council to engage in an interactive process that could result in COAH proposing amendments to its revised third round rules. Any such amendments would be required to be adopted in accordance with the APA and would be subject to challenge by an interested party such as appellant. But the mere fact that Executive Order 114 may have set in motion a process that could lead to the adoption of rules that would violate the FHA is not grounds for its invalidation. Therefore, we affirm the validity of Executive Order 114.

III.
We reject appellant's challenge to the validity of the October 30, 2008 MOU entered into between COAH and the Council for similar reasons. The MOU states that COAH "shall ensure" that any Highlands Region municipality that "chooses to conform to the RMP [may] utilize the adjusted growth projections prepared by the Highlands Council," which seems to reflect a commitment by COAH to modify the growth projections of those municipalities contained in the revised third round rules. The MOU also states that any Highlands Region municipality that complies with certain conditions set forth in the MOU shall be granted a "waiver" from the December 31, 2008 deadline established by N.J.A.C. 5:96-16.2 for submission of petitions for substantive certification under the revised third round rules to December 8, 2009, which seems to reflect a firm commitment by COAH to grant such an extension of the deadline for submission of petitions for substantive certification. However, the MOU itself did not have any operative effect. It did not modify either the revised third round rules adopted by COAH or the RMP adopted by the Highlands Council. Such a modification would require official action by COAH or the Highlands Council in accordance with their respective enabling acts. It is that official action, rather than an agreement between COAH and the Highlands Council to take that action at some future date, which would be subject to judicial review to determine its conformity with the FHA, the Highlands Act, and other applicable requirements. Before that official action is taken, any challenge to the agencies' planned course of action is premature. See N.J. Civil Serv. Ass'n v. State, 88 N.J. 605, 611-12, 443 A.2d 1070 (1982).

IV.
After it entered into the MOU, COAH adopted a resolution on November 12, 2008, which extended the deadline for Highlands Region municipalities that satisfied the conditions set forth in the resolution to submit petitions for substantive certification under the revised third round rules to December 8, 2009. On August 12, 2009, COAH adopted another resolution further extending this deadline to June 8, 2010. Insofar as the record before us indicates, COAH did not further extend this deadline, and thus all municipalities in the Highlands Region under the jurisdiction of COAH were required to submit *1181 petitions for substantive certification under the revised third round rules no later than June 8, 2010. Therefore, appellant's challenge to the resolutions extending that deadline is dismissed as moot.[2]See Warnock Auto. Grp., Inc. v. State, Dept. of Treasury, 272 N.J.Super. 450, 453, 640 A.2d 332 (App.Div.1994).

V.
Finally, we consider the validity of the August 12, 2009 COAH resolution that "waived" parts of the revised third round rules as applied to municipalities in the Highlands Region and instead directed those municipalities to follow the procedures and standards set forth in the "Guidance document" in preparing petitions for substantive certification. The "whereas" clauses of this resolution recited that COAH had determined municipal "growth share obligation[s] for the period January 1, 2004 through December 31, 2018" in the revised third round rules "based upon COAH's household and employment projections"; that the Highlands Act requires COAH "to take into consideration [the RMP] prior to making any determination regarding the allocation of the prospective fair share of [affordable] housing need . . . in the Highlands Region," but that the Council had not yet adopted the RMP or finalized its own "build-out analysis" of projected growth in the Highlands Region when COAH made its projections; and therefore, "COAH was not able to take into account the RMP municipal build-out reports when determining municipal fair share need" in formulating the revised third round rules. The resolution concluded that since the RMP and the Council's build-out analysis had now been issued, there was a "need for adjustments to the third round growth projections from those set forth in COAH's revised third round [rules]."
The Guidance document attached to the August 12, 2009 resolution sets forth complex formulas by which a municipality in the Highlands Region preservation area can calculate its "RMP Adjusted Growth Projections." Those RMP adjusted growth projections appear to be substantially lower than the growth projections for Highlands Region municipalities set forth in the revised third round rules. This document specifically states: "This RMP Adjusted Highlands Growth Projection may be used in place of the COAH Projected Growth Share Obligation pursuant to [the revised third round rules] in [a Highlands Region municipality's] Fair Share Plan submission."
The APA requires any state administrative agency "rule" to be adopted in accordance with the procedures set forth in N.J.S.A. 52:14B-4(a), which were summarized earlier in this opinion. See ante at 623-24, 25 A.3d at 1177-78. These procedural requirements for adoption of a rule also apply to "[a]ny rule proposed by a State agency which revises, rescinds or replaces . . . any . . . existing rule." N.J.S.A. 52:14B-4.9; see also N.J.S.A. 52:14-2(e) (defining "rule" to include "the amendment . . . of any rule").
The determination whether administrative agency action constitutes adoption of a "rule" is governed by the *1182 APA's definition of this term and the amplification of this definition in Metromedia v. Director, Division of Taxation, 97 N.J. 313, 331-32, 478 A.2d 742 (1984). The pertinent part of N.J.S.A. 52:14B-2(e) defines "rule" to mean "each agency statement of general applicability and continuing effect that implements or interprets law or policy." Metromedia identified six factors that should be considered in determining whether an agency pronouncement is a "rule" under this definition:
[Whether it] (1) is intended is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. [97 N.J. at 331-32, 478 A.2d 742.]
"[A]n agency determination must be considered an administrative rule when all or most of the relevant features of administrative rules are present and preponderate in favor of the rule-making process." Id. at 331, 478 A.2d 742.
Applying these factors, we recently concluded that the "Regional Affordable Housing Development Program Guidelines" issued by COAH, which set forth standards under which municipalities under the jurisdiction of the Council and other regional planning entities could transfer up to 50% of their affordable housing obligations to other municipalities within that entity's jurisdiction, were rules that should have been adopted in accordance with the rule-making procedures of the APA. In re Adoption of Reg'l Affordable Hous. Dev. Program Guidelines by Council on Affordable Hous., 418 N.J.Super. 387, 391-95, 13 A.3d 900 (App.Div. 2011).
We conclude that the August 12, 2009 COAH resolution that "waived" parts of the revised third round rules as applied to Highlands Region municipalities and directed those municipalities to follow the procedures and standards set forth in the Guidance document in preparing petitions for substantive certification, like the COAH "Regional Affordable Housing Development Program Guidelines" invalidated in In re Regional Affordable Housing Development Program Guidelines, are rules that were required to be adopted in conformity with the APA. The resolution and accompanying Guidance document effectively amended significant parts of the revised third round rules as applied to Highlands Region municipalities, specifically the sections that determined those municipalities' projected growth share obligations.
Applying the Metromedia factors, the resolution and Guidance document have "wide coverage encompassing a large segment of the [municipalities] regulated [by the FHA]," because they apply to all eighty-eight municipalities in the Highlands Region; they are "intended to be applied generally and uniformly" to Highlands Region municipalities;[3] they apply *1183 "prospectively" to Highlands Region municipalities' determinations of their third round affordable housing obligations; they "prescribe[ ] a legal standard or directive that is not otherwise inferable from the [FHA]"; they "reflect an administrative policy that . . . constitutes a material and significant change from a clear, past agency position on the identical subject matter," as set forth in the revised third round rules; and they "reflect a decision on administrative regulatory policy in the nature of the law or general policy." 97 N.J. at 331-32, 478 A.2d 742. Therefore, the August 12, 2009 COAH resolution waiving parts of the revised third round rules and the accompanying Guidance document that superseded those rules satisfy all the Metromedia criteria for determining whether an administrative agency pronouncement is an administrative rule that must be adopted in accordance with the APA.
COAH argues that its August 12, 2009 resolution and the Guidance document did not constitute an amendment to the revised third round rules that had to be adopted in accordance with the rule-making procedures of the APA, but rather a "waiver" of parts of those rules as applied to Highlands Region municipalities. However, the power to waive administrative rules may be used solely to deal with the unusual circumstances of an individual regulated party. See Dougherty v. Dep't of Human Servs., 91 N.J. 1, 10-12, 449 A.2d 1235 (1982). It may not be invoked to implement wholesale changes in administrative rules, as applied to a large segment of regulated parties, which circumvent the rule-making requirements of the APA. See SMB Assocs. v. N.J. Dep't of Envtl. Prot., 264 N.J.Super. 38, 48-59, 624 A.2d 14 (App.Div.1993), aff'd, 137 N.J. 58, 644 A.2d 558 (1994). Therefore, the August 12, 2009 resolution and Guidance document are not sustainable as an exercise of COAH's authority to waive application of the revised third round rules in individual cases.
Accordingly, we affirm the validity of the Highlands RMP, Executive Order 114 and the October 30, 2008 MOU. We dismiss as moot the part of appellant's appeal that challenges the validity of the COAH resolutions extending the deadline for the filing of petitions for substantive certification by Highlands Region municipalities. We invalidate the August 12, 2009 COAH resolution and accompanying Guidance document on the ground it is an administrative rule COAH was required to adopt in accordance with the APA.
NOTES
[1] Appellant's initial brief did not clearly indicate that appellant was challenging the validity of the RMP on this basis. Although appellant's notice of appeal and the procedural history section of the brief stated that appellant was challenging the RMP, the argument section seemed to be directed solely at the Council's actions subsequent to adoption of the RMP. However, respondents' answering brief asserted that "[t]he Legislature, fully aware of the APA, chose not to require the RMP be adopted as a rule" and presented argument in support of this assertion. Appellant's reply brief responded with an argument, under a separate point heading, that "the Highlands Act expressly required the RMP to be adopted through rulemaking" under the APA. Thereafter, including at oral argument, the parties have treated this as one of the issues presented by the appeal. Therefore, we consider the issue to be properly before us.
[2] We note that shortly after this extended deadline, we invalidated substantial portions of the revised third round rules and remanded to COAH to adopt new third round rules within five months. In re Adoption of N.J.A.C. 5:96 & 5:97 by N.J. Council on Affordable Hous., 416 N.J.Super. 462, 6 A.3d 445 (App. Div.2010). The Supreme Court subsequently granted certification and stayed our decision requiring the adoption of new revised third round rules. 205 N.J. 317, 15 A.3d 325 (2011). Consequently, the main components of the revised third round rules are not presently in effect.
[3] The "Guidance" document establishes three subclasses of Highlands Region municipalities(1) those that are located wholly in the preservation area; (2) those that are located partly in the preservation area and partly in the planning area; and (3) those that are located wholly in the planning area. The formulas set forth in the Guidance document for determining "RMP Adjusted Growth Projections" apply "uniformly" within each of these subclasses.